<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| **DOMINGA FERMIN,** | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 10-3755 (JLL) |
| | : | |
| v. | : | |
| | : | |
| **TOYOTA MATERIAL HANDLING,** | : | |
| **U.S.A., INC., ET AL.,** | : | OPINION |
| | : | |
| Defendants. | : | |
| | : | |

**HAMMER, United States Magistrate Judge**

**I.   INTRODUCTION**

This matter comes before the Court by way of the plaintiff's motion for leave to file an Amended Complaint to add a claim for punitive damages pursuant to New Jersey's Punitive Damages Act, N.J. Stat. Ann. §§ 2A:15-5.9–5.17.  For the reasons set forth below, the plaintiff's motion is denied.

**II.   BACKGROUND**

   **A.   Factual Background**

Defendant Toyota Material Handling, U.S.A., Inc. ("Toyota") designs, builds, and sells forklifts, including the 2004 Toyota 7FGCU20 Series 7 Forklift ("Series 7 Forklift").  (Proposed Am. Compl. ¶ 2, Jan. 13, 2012, ECF No. 38).  Beginning in January 2008, Jailen Beato was employed as a part-time dock worker for Fed Ex National Freight.  (<u>Id.</u> ¶ 4.)  On September 30, 2009, Beato was operating a Series 7 Forklift.  (<u>Id.</u> ¶ 5).  Beato stood up from his seat and leaned

1

over the controls and through the front into the forklift's "mast area," that is, the area where the back end of the fork goes up and down. (Id.) Beato was attempting to read a label on a pallet resting on the fork. (Id.) Beato's torso pressed against the controls causing the mast to lower, crush his chest, and inflict severe injuries including brain damage. (Id.)

### B. Procedural History

On June 28, 2010, Beato's sister and guardian, plaintiff Dominga Fermin, filed a Complaint on Beato's behalf in New Jersey Superior Court, Passaic County. (Compl. ¶ 1, June 28, 2010, ECF No. 1 (Ex. A to Notice of Removal)). The plaintiff alleges that Toyota, despite knowing the dangers posed by the inadvertent activation of the mast controls, failed to address a known design defect, failed to implement readily available alternative safety features, and failed to provide warnings regarding the risks. (Id. ¶¶ 6, 8, 15–16.)

On July 27, 2010, Toyota removed this action to the United States District Court, District of New Jersey. (Notice of Removal, July 27, 2010, ECF No. 1). On July 30, 2010, the Court scheduled an initial scheduling conference and ordered the parties to submit a joint discovery plan in the format attached to its letter order. (Letter Order, July 30, 2010, ECF No. 4). On November 11, 2010, the plaintiff's counsel submitted the parties' joint discovery plan, signed by counsel for both parties. (Joint Discovery Plan, Nov. 11, 2010, ECF No. 5). In the joint discovery plan, the parties proposed the following deadline: "Motions to Amend or to Add Parties to be filed by April 30, 2011." (Id. at 2, ¶ 6(h) (underline in original)). On November 16, 2010, the Court held a scheduling conference and thereafter issued a Pretrial Scheduling Order. (See Sched. Order, Dec. 14, 2010, ECF No. 6). The Court set a September 30, 2011 deadline for fact discovery and an April 30, 2011 deadline to file "[a]ny motion to add new parties, whether

by amended or third-party complaint." (Id. ¶¶ 2.b., 13.)  The Scheduling Order did not specifically reference a motion to amend pleadings generally.  However, the summary docket entry listed: "Amended Pleadings due by 4/30/11." (Docket Entry, Dec. 14, 2010, ECF No. 6).

In March 2011, the Court held a telephone conference with the parties.  Based on that conference, the Court filed an Amended Scheduling Order on April 6, 2011. (Order, Apr. 6, 2011, ECF No. 12).  Among other things, the Amended Scheduling Order extended fact discovery to October 30, 2011, and directed that "[m]otions to amend the pleadings must be filed no later than May 30, 2011." (Id. ¶ 5).

On October 27, 2011, Toyota requested an extension of discovery to re-depose a witness based on newly acquired information (Def.'s Letter at 1, Oct. 27, 2011, ECF No. 24), and the plaintiff objected because the parties had agreed to conduct depositions on these topics and had done so, in June 2011.  (Pl.'s Letter at 2–3, Oct. 27, 2011, ECF No. 25).  On November 23, 2011, the Court held a telephone conference and provided a limited extension of discovery for the depositions of particular witnesses.  (See Order, Nov. 23, 2011, ECF No. 29.)  In litigating that dispute, neither party asked the Court to extend the May 30, 2011 deadline for filing motions to amend.

On December 15, 2011, the plaintiff submitted a letter on behalf of both parties requesting extensions of just a few days of certain deadlines in the November 23, 2011 Order. (Pl.'s Letter at 1–2, Dec. 15, 2011, ECF No. 32.)  The plaintiff's letter also stated that "[a]ll other dates and deadlines in the November 23, 2011 Scheduling Order shall remain in effect." (Id. at 2.)  The proposed changes were so ordered by the Court the following day. (Order, Dec. 16, 2011, ECF No. 33.)

On December 28, 2011, the plaintiff sought leave to amend the Complaint to seek punitive damages. (Pl.'s Letter, Dec. 28, 2011, ECF No. 35). The Court set a briefing schedule for motion practice. (Order, Dec. 29, 2011, ECF No. 37.) The plaintiff moved to amend on January 13, 2012 (Mot. to Am. Compl., Jan. 13, 2012, ECF No. 38), the defendant filed opposition on January 23, 2012 (Def.'s Opp'n Br., Jan. 23, 2012, ECF No. 43), and the plaintiff filed a reply on January 27, 2012. (Pl.'s Reply Br., Jan. 27, 2012, ECF No. 45).

**III.   DISCUSSION**

    **B.   Rule 16(b)**

Rule 16 of the Federal Rules of Civil Procedure authorizes courts to enter schedules of proceedings. Rule 16's purpose is to empower the Court to:

> (1) expedit[e] disposition of the action;
> (2) establish[] early and continuing control so that the case will not be protracted because of lack of management;
> (3) discourag[e] wasteful pretrial activities;
> (4) improv[e] the quality of the trial through more thorough preparation; and
> (5) facilitat[e] settlement.

Fed. R. Civ. P. 16(a).[1] The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 469 (D.N.J. 1990) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 Amendment)); see also Newton v. A.C. & S., Inc.,

---

[1] See also Fed. R. Civ. P. 16(a) Advisory Committee's note (1983 Amendment) (stating that "scheduling and case management" are express goals of pretrial procedure and emphasized judicial management of motions and discovery); Fed. R. Civ. P. 16(c) advisory committee's note (1993 amendment) (noting the need "to eliminate questions that have occasionally been raised regarding the authority of the court to make appropriate orders designed . . . to provide for an efficient and economical trial.")

918 F.2d 1121, 1126 (3d Cir. 1990) (stating that purpose of Rule 16 is to provide for judicial control over cases, streamline proceedings, maximize efficiency of court system, and actively manage timetable of case preparation to expedite speedy and efficient disposition of cases). Importantly, the scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Requiring the court to include a deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed." Fed. R. Civ. P. 16(b) advisory committee's note (1983 Amendment); see also Harrison, 133 F.R.D. at 469 ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired.").

Whether "good cause" exists under Rule 16 "depends on the diligence of the moving party." GlobespanVirata, Inc. v. Texas Instruments, Inc., Civ. No. 03-2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (quoting Rent-A-Ctr. v. Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. 2003)). "[G]ood cause may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" Phillips v. Greben, Civ. No. 04-5590, 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006) (citing Newton v. Dana Corp. Parish Div., Civ. No. 94-4958, 1995 WL 368172, at *1 (E.D. Pa. 1995)). "[T]he absence of prejudice to the non-moving party does not constitute 'good cause.'" Harbor Laundry Sales, Inc. v. Mayflower Textile Servs. Co., Civ. No. 09-6259, 2011 WL 6303258, at *3 (D.N.J. Dec. 16, 2011) (citing GlobespanVirata, 2005 WL 1638136, at *3).

Put succinctly, "[a]bsent diligence, there is no 'good cause.'" Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695, 702 (E.D. Pa. 2007); see also Fed. R. Civ. P. 16(b), advisory committee's note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

In determining whether "good cause" exists for an untimely motion to amend pleadings, courts typically examine whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the amended motion before the deadline had expired. See Stallings ex rel. Estate of Stallings v. IBM Corp., Civ. No. 08-3121, 2009 WL 2905471, at *2 (D.N.J. Sept. 8, 2009) (denying a plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); see also Kennedy v. City of Newark, Civ. No. 10-1405, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed."). If a movant did have the knowledge necessary to file a motion prior to the expiration of the Court's deadline, and if the movant can provide no satisfactory explanation for the delay, the Court has the discretion to deny the motion. See Dimensional Commc'n, Inc. v. OZ Optics, Ltd., 148 F. App'x 82, 85 (3d Cir. 2005) (upholding trial court's finding that movant could not satisfy "good cause" because it was in possession of the facts underlying its proposed counterclaim well before amendment deadline); Harrison, 133 F.R.D. at 469 (movant failed to satisfactorily explain delay in filing the motion to amend).

If Rule 16 does not apply, then the plaintiff must satisfy only the less exacting standard

under Rule 15(a)(2). Toyota argues that the plaintiff must satisfy Rule 16, and the plaintiff contests this assertion. Therefore, the Court must first determine the standards that apply to the plaintiff's motion to amend. At the outset, there are two issues regarding the application of Rule 16: (1) whether the Court ever set a deadline to amend the pleadings, and (2) if it did, whether the plaintiff has demonstrated good cause to amend after the deadline expired. The Court considers each issue in turn.

### B. Deadline to Amend Pleadings

The plaintiff argues that Rule 16 is inapplicable because the Court never set a deadline for moving to amend pleadings to add new claims. (Pl.'s Reply Br. at 3.) Instead, the plaintiff contends that the Court's December 14, 2010 Scheduling Order set an April 30, 2011 deadline to join additional parties, not amend pleadings generally. (Id.) After entry of that Order, the parties sought, and the Court granted, a thirty-day extension of all deadlines. (Id. at 4.) Thus, the plaintiff argues, the May 30, 2011 deadline for "[m]otions to amend the pleadings" only embodied the deadline to join parties. (Id. at 3–4). The plaintiff also asserts that he "was not aware of any deadline which would have required him [sic] to have filed a motion to amend any earlier" (id. at 4) and that "[a]t no time was there any request by either side -- nor any discussion with the Court -- that there was any deadline with regard to the amendment of plaintiff's assertion of claims." (Supplemental Mazie Certif. ¶ 4, Jan. 27, 2012, ECF No. 45.) Therefore, the plaintiff posits that there was no deadline to amend the pleadings other than to add parties.

The plaintiff's argument fails. Even assuming that the omission of a general deadline to

amend pleadings in the original Pretrial Scheduling Order caused any confusion,[2] the April 6, 2011 Order resolved any ambiguity by providing that "[m]otions to amend the pleadings must be filed no later than **May 30, 2011**."  (Order ¶ 5, Apr. 6, 2011 (emphasis in original).)  The plaintiff's suggestion that the May 30, 2011 deadline set forth in the Amended Scheduling Order can refer only to the addition of parties because the original deadline referred only to the addition of parties ignores the plain text of paragraph 5 of the April 6, 2011 Order.

Additionally, the logical extension of the plaintiff's suggestion is that the Court was foreclosed on April 6, 2011, from setting a deadline to amend the pleadings other than to add parties.  Rule 16 proscribes the plaintiff's interpretive construct as the plain text of Rule 16 requires that the pretrial scheduling order contain certain contents, including a limitation on "the time to . . . amend the pleadings . . . ."  Fed. R. Civ. P. 16(b)(3)(A).  This construct also ignores the Court's broad discretion under Rule 16 to control the scheduling of proceedings before it.  See In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) ("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court.").  As noted above, Rule 16 requires the Court to manage the case to ensure that the litigation

---

[2] The parties' joint discovery plan proposed "Motions to Amend or to Add Parties to be filed by April 30, 2011."  (Joint Discovery Plan at 2, ¶ 6(h) (underline in original).)  The Court adopted this deadline in paragraph 13 of the initial Pretrial Scheduling Order filed on December 14, 2010.  (Sched. Order ¶ 13, Dec. 14, 2010.)  Additionally, the docket entry summary for the December 14, 2010 Order stated that "Amended Pleadings due by 4/30/2011."  (See Docket Entry, Dec. 14, 2010.)  The record does not reflect that, at any time, the plaintiff raised with the Court questions concerning any discrepancy between the language of the joint discovery plan, the December 14, 2010 Scheduling Order, or the docket entry summary for that order.

It also bears noting that the plaintiff never sought reconsideration of the April 6, 2011, Amended Scheduling Order to contest what he now implies was an impermissible broadening of the deadline to amend pleadings from the original Scheduling Order.

proceeds fairly and efficiently. See Fed. R. Civ. P. 16(a). Implicit in this task is the imposition and enforcement of deadlines to complete the principal tasks of litigation. See Harrison, 133 F.R.D. at 469; see also Newton, 918 F.2d at 1126; Dimensional Commc'n, 148 F. App'x at 85.

Accordingly, the Court is unpersuaded that the record demonstrates that the April 6, 2010 Order's May 30, 2011 deadline to amend means anything other than its plain language. Because the plaintiff has moved to amend his pleading after the May 30, 2011 deadline set by this Court in its April 6, 2011 Order, the Court must now consider whether the plaintiff has demonstrated good cause to move to amend after that deadline.

**C.     Good Cause**

As discussed above, the deadline to amend the pleadings expired on May 30, 2011. (Order ¶ 5, Apr. 6, 2011.) The plaintiff moved for leave to amend the Complaint on January 13, 2012 — a delay of more than seven months. Therefore, whether the plaintiff may now amend the Complaint notwithstanding the delay turns on her ability to demonstrate "good cause" under Rule 16, that is, whether the plaintiff nonetheless has acted with diligence or lack thereof.

The plaintiff relies on two arguments to explain the delay. First, the plaintiff asserts that she was "not aware of any deadline which would have required him [sic] to have filed a motion to amend any earlier." (Pl.'s Reply Br. at 4.) The Court has rejected this argument for the reasons set forth above, and the Court cannot construe the plaintiff's omission as an excusable inadvertent mistake. See, e.g., In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig., Civ. No. 08-2177, 2012 WL 406905, at *5 (D.N.J. Feb. 7, 2012) (accidental omission of "Paragraphs 356 and 357" from proposed pleading over 200 pages long in complex action where delay was over two and half months after deadline but while motion to amend was still pending); Bell v.

9

Lockheed Martin Corp., Civ. Nos. 08-6292, 10-4297, 2011 WL 1467365, at *4–5 (D.N.J. Apr. 18, 2011) (understandable confusion found in multi-class action lawsuit as to motion to amend deadline where it was "far from clear whether the original Scheduling Oder was implicitly superseded by the comprehensive Scheduling Order and/or suspended by the subsequent motion practice"); Coulson v. Town of Kearny, Civ. No. 07-5893, 2010 WL 331347, at *4 (D.N.J. Jan. 19, 2010) (equipment failure caused missed deadline to amend pleadings by 63 minutes). Likewise, given the plain language of the April 2011 Scheduling Order, and the plaintiff's failure, to the extent such confusion existed, to seek clarification or reconsideration of the May 30, 2011 deadline set forth in that Order, the plaintiff's purported confusion does not understandably account for the plaintiff's belief that there was no deadline to amend pleadings.

Second, the plaintiff argues that it was not possible to amend its complaint before the May 30, 2011 deadline because "many of the operative facts necessary to support plaintiff's punitive damages claim were only obtained through the depositions of defendant's designees which were all taken **after** the purported 'deadline' of May 30, 2011." (Pl.'s Reply Br. at 4 (emphasis in original).)  Specifically, the plaintiff claims that her amended complaint "relies extensively" upon the testimony of three witnesses—Ronald Roench, Martin Boyd, and John Braun—who were deposed on June 28, 2011, June 30, 2011, and July 1, 2011.  (Id. at 4.)  The plaintiff also states that "[f]act discovery continued through December [2011], at which time we came to the conclusion that the conduct of Toyota was egregious enough to justify a jury's consideration of punitive damages."  (Id. at 5.)  Lastly, the plaintiff states that "we moved to amend the pleadings as soon as discovery was completed and as soon as we had enough evidence to support such a claim."  (Id.)

Notwithstanding the plaintiff's assertions, this record does not demonstrate that the plaintiff acted diligently to use the newly acquired information. Consistent with the plaintiff's representations, a review of the plaintiff's briefs shows that her motion depends on deposition testimony obtained in June and July 2011. Indeed, the plaintiff's moving brief contains numerous citations to and excerpts from those depositions. (See Pl.'s Br. at 5–14, Jan. 13, 2012, ECF No. 38 (approximately thirty-six citations to June and July 2011 depositions.) However, even if it is true that the plaintiff required this information to amend the Complaint, she fails to explain why she did not seek to amend at that point, and instead waited approximately six more months before first requesting leave to amend.[3]

More recent information in the plaintiff's briefs, such as her expert's December 2011 medical report (see Mazie Certif. Ex. E, Jan. 13, 2012, ECF No. 38), does not appear to concern facts necessary to plead a punitive damages claim. Facts necessary to plead a claim under the New Jersey Punitive Damages act include allegations pertaining to the defendant's conduct, awareness, and the likelihood of harm from that conduct. See N.J. Stat. Ann. § 2A:15-5.12. The plaintiff fails to explain how the December 2011 medical report was a necessary prerequisite to filing the punitive damages claim, much less why the plaintiff could not procure that information sooner. Also, the plaintiff's moving brief makes cursory mention of her engineering expert's report, also from December 2011. (Pl.'s Br. at 11 (citing Mazie Certif. Ex. R).) But the Court fails to see, and the plaintiff fails to argue, that this report contained new information necessary to this motion. Indeed, a review of the report demonstrates that it relies on older information,

---

[3] Toyota strenuously contests the plaintiff's assertion that she lacked the discovery or information necessary to amend before the May 30, 2011 deadline. (Def.'s Opp'n Br. at 11.)

namely, the June and July depositions.  (See Mazie Certif. Ex. R, at 16, 18–19, 27.)  For other information on which the plaintiff uses as support for her motion to amend, the plaintiff provides no indication when she received it.  Thus, the record before the Court suggests that the plaintiff had the information on which she relied to amend the Complaint in or before early July 2011, at the conclusion of the June and July depositions.  (See Pl.'s Reply Br. at 4.)

      While information obtained after a deadline to amend can constitute good cause, that good cause does not extend indefinitely.  Here, the plaintiff waited six months after the July 1, 2011 deposition before requesting leave to amend in late December 2011 and moving to amend in mid-January 2012.  The record before the Court suggests that any good cause to amend after the May 30, 2011 deadline existed at the conclusion of the depositions in June and July 2011.  The plaintiff does not adequately explain the delay between the conclusion of those depositions and the January 13, 2012 filing of the present motion.  The plaintiff's assertion that fact discovery continued through December 2011 does nothing to explain this delay without further demonstrating that some later discovered information was necessary for the present amendment.  Similarly unhelpful is the bald assertion that it was only in December 2011 that the plaintiff's counsel "came to the conclusion that the conduct of Toyota was egregious enough to justify a jury's consideration of punitive damages."  (Pl.'s Reply Br. at 5.)  Without pointing to specific information that was newly obtained in or around December 2011 and necessary to this motion, the plaintiff demonstrates only a delayed analysis, not diligence.  Thus, the record before the Court does not suggest a situation where the movant demonstrates diligence by acting on promptly on the newly discovered information.  See, e.g., Kennedy, 2011 WL 2669601, at *2 (seventeen day delay); Pouncil v. Branch Law Firm, Civ. No 10-1314, 2011 WL 5837230, at

12

*1–2 (D. Kan. Nov. 21, 2011) (two month delay).

Accordingly, the Court finds that good cause does not exist for the plaintiff to amend the scheduling order and thus denies the plaintiff's motion to amend.[4]

## V. CONCLUSION

For the reasons state herein, the plaintiff's motion for leave to file the proposed Amended Complaint is denied. An appropriate form of Order accompanies this Opinion.

s/Michael A. Hammer<br>**UNITED STATES MAGISTRATE JUDGE**

Date: April 23, 2012

---

[4] Toyota also argues that the proposed amendment should be denied as futile. (Def.'s Opp'n Br. at 12–24.) Having concluded that the plaintiff is required to satisfy the "good cause" requirement of Fed. R. Civ. P. 16 and has failed to so, the Court need not reach the futility analysis.